**NOT FOR PUBLICATION**                                                   **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUZ RUIZ, | |
|         Plaintiff, | |
| | Civil Action No. 07-4935 |
| v. | |
| | **OPINION & ORDER** |
| MICHAEL J. ASTRUE, | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | Dated: February 27, 2009 |
|         Defendant. | |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Luz Ruiz's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

### I. BACKGROUND

**A.**    **Plaintiff's Medical And Vocational History**

      Plaintiff is a 51-year old woman with a 10th grade education. (Compl. ¶ 4.) Her past work experience includes employment as a packer and a laundry worker. (Tr. 81, 89.) In her initial application for benefits dated December 2002, Plaintiff alleged that she was disabled due to hearing loss in her left ear. (Tr. 80). She subsequently added that she suffers from a number

1

of physical ailments, including asthma, chronic obstructive pulmonary disease, carpal tunnel syndrome, and leg pain, as well as depression impacting her ability to perform mental work-related activities.[1]  (Tr. 108, 513.)

Plaintiff was first examined for potential psychiatric disorders on March 20, 2003 by Daniel Greenwald, M.D., staff psychiatrist, and Oscar Arancibia, M.A., clinical psychologist. (Tr. 183-85.)  The doctors found that although her mood was anxious and depressed, Plaintiff's thought content was appropriate, her concentration and memory were unimpaired, her insight and judgment seemed adequate, and her intellectual level appeared to be in the average range.  (Tr. 184.)  Dr. Greenwald met with Plaintiff again on May 29, 2003 for a psychiatric assessment.  (Tr. 191-96.)  Despite a depressed mood, he again found her attention and memory were adequate, her insight and judgment were fair, and her intellectual capacity as average or above.  (Tr. 193-94.)

Brett T. Hartman, Psy. D., completed a consultative psychiatric examination of Plaintiff on May 30, 2003.  (Tr. 197-99.)  He noted that although her mood was dysphoric, her thought processes were "coherent and goal-directed."  (Tr. 198.)  Dr. Hartman diagnosed her condition as major depressive disorder, moderate, without psychotic features.  (Tr. 199.)  Overall, he found Plaintiff "able to follow and understand simple directions and instructions," with "a fair ability to make appropriate decisions," despite "mild attention and concentration problems."  (Tr. 199.) He noted however that Plaintiff would have mild to moderate problems relating adequately with others and would likely have moderate problems dealing appropriately with the normal stressors

---

[1] Because Plaintiff does not contest the ALJ's findings with respect to the <u>physical</u> impairments she alleges, the Court will not address them herein.

of life.  (Tr. 199.)

On June 16, 2003, M. Sadiqur Rahman, M.D., reviewed Plaintiff's records and rated her functional limitations.  (Tr. 205-18.)  Dr. Rahman found that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration.  He found no evidence of episodes of decompensation.  (Tr. 215.)  Dr. Rahman also completed a Mental Residual Functional Capacity Assessment, in which he noted moderate limitations in Plaintiff's ability to maintain concentration for extended periods, to perform activities within a schedule, and to maintain socially appropriate behaviors.  (Tr. 219-21.)  Considering these limitations, Dr. Rahman concluded that Plaintiff "appears able to perform rote tasks in a low contact setting [and] without significant production pressure."  (Tr. 217.)  Thomas Harding, Ph.D., concurred with these assessments on October 20, 2003.  (Tr. 205, 221.)

A current mental behavioral status examination performed by Drs. Greenwald and Arancibia on September 24, 2004 indicated that Plaintiff's mood remained "anxious and depressed," but that her responses were "relevant and coherent," her insight seemed fair, and her judgment was adequate.  Plaintiff's memory and concentration were intact, "but anxiety and depressive reactions seem to interfere."  (Tr. 305.)  The doctors noted, however, that the frequency and intensity of Plaintiff's symptoms had gradually decreased since she began individual psychotherapy sessions in March 2003.  (Tr. 306.)

Jan S. Cavanaugh, Ph.D., conducted a second consultative psychiatric examination of Plaintiff on August 9, 2005.  (Tr. 735-38.)  Dr. Cavanaugh found that Plaintiff's mood was depressed, and that her attention and concentration were mildly impaired due to medication and

3

tiredness. (Tr. 737.) Her manner of relating, social skills, and overall presentation appeared adequate. (Tr. 736.) Dr. Cavanaugh diagnosed Plaintiff with depressive disorder and personality disorder. (Tr. 738.) Overall, Dr. Cavanaugh concluded that Plaintiff appeared capable of understanding and following simple instructions, performing simple and complex tasks with supervision, and interacting appropriately with others. She opined however that Plaintiff could not regularly attend to a routine and that she appeared limited in dealing with stress. (Tr. 738.)

On September 7, 2005, J. Drucker, M.D., reviewed Plaintiff's records and prepared a Mental Residual Functional Capacity Assessment. (Tr. 776-79.) Dr. Drucker found that Plaintiff was not significantly limited in her ability to understand, remember, and carry out instructions, relate to coworkers and supervisors, and complete a normal workweek. (Tr. 776-78.) Dr. Drucker rated Plaintiff's functional limitations, noting mild restrictions of activities in daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration. Dr. Drucker saw no evidence of episodes of deterioration. (Tr. 790.) Richard Altmansberger, Ph.D., concurred with these assessments on June 20, 2006. (Tr. 778, 780.)

Most recently, in a medical assessment of Plaintiff's ability to do work-related mental activities requested by Plaintiff's counsel in 2006, Dr. Greenwald indicated that Plaintiff had a good ability to use judgment, and a fair ability to follow work rules, relate to co-workers, interact with supervisors, maintain attention/concentration, and understand, remember, and carry out simple job instructions. (Tr. 421-22.) Dr. Greenwald noted that Plaintiff had a poor ability to deal with work stress. (Tr. 421.) He did not, however, provide clinical findings or other evidence in support of his assessments. (Tr. 423.)

4

B.     **Procedural History**

On December 9, 2002, Plaintiff filed applications for disability insurance benefits and for Supplemental Security Income alleging an inability to work since November 17, 2002. (Tr. 58-60, 307-09.) These applications were denied initially (Tr. 28, 30-33, 310-14), and on reconsideration. (Tr. 29, 37-39, 315-19.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 40-41.) The hearing convened on September 24, 2004 before ALJ Dean W. Determan; Plaintiff, with her attorney, appeared and testified at the hearing. (Tr. 321.) ALJ Determan issued a decision on October 1, 2004, finding that Plaintiff was not disabled and was thus not entitled to benefits. (Tr. 12-27.) Plaintiff's request for review of the hearing decision was subsequently denied by the Appeals Council on November 18, 2004. (Tr. 6-8.)

On January 13, 2005, Plaintiff instituted a civil action in this Court. (Tr. 382.) By Consent Order dated August 8, 2005, the Honorable Dickinson R. Debevoise remanded the case to the Commissioner for further administrative proceedings. (Tr. 378-79.) On October 31, 2005, the Appeals Council vacated ALJ Determan's decision, and remanded the case to an ALJ to reevaluate the severity of Plaintiff's mental impairments and to take testimony from a vocational expert. (Tr. 386-87.)

On remand, additional medical documents were added to the administrative record. A second hearing was held on February 22, 2006 before ALJ Dennis O'Leary,[2] at which Plaintiff and a vocational expert testified. (Tr. 455-84.) On May 25, 2006, ALJ O'Leary issued his

---

[2] On March 17, 2005, Plaintiff filed a second application for Supplemental Security Income. This application was denied initially and on reconsideration. (Tr. 485-98.) It was consolidated with her initial applications and considered by ALJ O'Leary on remand. (Tr. 355.)

5

decision, finding that Plaintiff had been disabled since December 19, 2005, but not prior to that date. (Tr. 351-77.) The decision of ALJ O'Leary became the final decision of the Commissioner on August 15, 2007, when the Appeals Council denied Plaintiff's request for review. (Tr. 345-47.) Plaintiff brought this action on October 12, 2007.

C.  **The Disability Standard And The Decision Of The ALJ**

    1.  <u>The Statutory Standard For A Finding Of Disability</u>

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

<u>Step One: Substantial Gainful Activity.</u>  The Commissioner first considers whether the

claimant is presently employed, and whether that employment is substantial gainful activity.[3]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of her medical condition.  20 C.F.R. § 416.920(b).

      Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities."  If the claimant does not demonstrate a severe impairment, she will be found not disabled.  20 C.F.R. § 416.920(c).

      Step Three: Listed Impairment.  If claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has such an impairment, she is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

      Step Four: Residual Functional Capacity.  At Step Four, the Commissioner determines whether, despite her impairment, the claimant retains the residual functional capacity ("RFC")[4] to perform her past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds no further.  If not, the Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f).

      Step Five: Other Work.  If the claimant is unable to perform her past work, the

---

[3] "Substantial" work involves significant physical and mental activities.  "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972.

[4] RFC designates the claimant's ability to work on a sustained basis despite her physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite her impairment(s).  See 20 C.F.R. § 416.945.

Commissioner considers the individual's RFC, age, education, and past work experience to determine if she is able to make an adjustment to other work. If she cannot do so, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy. Id.

2.   The ALJ's Decision

Applying this five-step analysis, the ALJ first found that Plaintiff has not engaged in substantial gainful activity since November 17, 2002. (Finding 2, Tr. 357.) At step two, he determined that Plaintiff suffers from a combination of physical impairments considered severe,[5] (Finding 3, Tr. 357-58), but at step three found that her condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations.[6] (Finding 4, Tr. 358-59.)

---

[5] Specifically, the ALJ found that Plaintiff has suffered from the following severe impairments since November 17, 2002: "chronic obstructive pulmonary disease/asthma and restrictive pulmonary disease." Since 2004, she also has had "severe carpal tunnel syndrome, degenerative disease in her cervical spine and leg problem." (Finding 3, Tr. 357.) Plaintiff has not challenged these findings.

[6] In making this finding, the ALJ compared Plaintiff's respiratory ailments to Listings 3.02 (chronic pulmonary insufficiency) and 3.03 (asthma). He analyzed in detail the relevant medical evidence to explain why these Listings were not met. (Finding 4, Tr. 358-59.) Similarly, he recited clinical findings relating to Plaintiff's carpal tunnel syndrome, degenerative disease in her cervical spine, and leg problems, and found they did not approach the severity of the most similar Listings – 1.04 (disorders of the spine) and 11.14 (peripheral neuropathies). (Finding 4, Tr. 359.) Plaintiff has not challenged this finding of the ALJ.

At step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity to lift and carry objects up to 10 pounds occasionally; lift and/or carry very light objects frequently; stand, walk and/or sit, alternating at her election, throughout an eight-hour workday; "perform all other physical work-related activities except being exposed to undue concentrations of dust, smoke, fumes, other pulmonary irritants, extremes of temperature or excessively loud noise, or localizing sounds;" and satisfy all mental demands of "simple, repetitive tasks." (Finding 5, Tr. 359.) Given this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a packer. (Finding 6, Tr. 374.)

Proceeding to step five, the ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, as well as the testimony of the vocational expert. (Finding 11, Tr. 375.) He determined that there were a significant number of jobs other than her past relevant work that Plaintiff could have performed from November 17, 2002 through December 18, 2005.[7] (Finding 11, Tr. 375.) Accordingly, in answering question five affirmatively, the ALJ found Plaintiff not disabled during the period November 17, 2002 through December 18, 2005, and consequently denied her application for disability benefits as to that period. (Finding 11, Tr. 376.)

---

[7] As described in the ALJ's decision, on December 19, 2005, Plaintiff turned 50 years old, and her age category changed from "younger person" (forty-six to forty-nine years old) to "person closely approaching advanced age." 20 C.F.R. §§ 404.1563, 416.963. The ALJ noted that as a result of this change in age category, Medical-Vocational Rule 201.9 directed a finding of disability, because there were not a significant number of jobs in the national economy that Plaintiff, as a person "closely approaching old age," could perform. Accordingly, the ALJ found Plaintiff disabled beginning December 19, 2005. (Finding 12, Tr. 376-77.)

## II.  DISCUSSION

A. **Standard Of Review**

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

B. **Review Of The Commissioner's Decision**

Plaintiff challenges the decision of the Commissioner on grounds that the ALJ's denial of benefits is not supported by substantial evidence.  Specifically, she argues that the ALJ disregarded evidence of her mental limitations and consequently erred by concluding that those limitations do not constitute a severe impairment, and do not preclude her ability to perform other work.  (Br. 18-20).  These contentions are without merit.

The ALJ dedicated over five pages of his decision to thoroughly evaluating the evidence of Plaintiff's mental condition.  (See Finding 5, Tr. 364-70.)  He analyzed each physician's findings and, contrary to Plaintiff's assertion otherwise (Pl. Br. 31), indicated why he found certain opinions convincing and others unpersuasive.  (See Finding 5, 364-70.)  See also Fargnoli v. Massanari, 247 F.3d 34, 42-43 (3d Cir. 2001) (ALJ must explain reasons for discounting evidence).  Weighing all the medical reports and Plaintiff's own submissions, the ALJ ultimately

found that while Plaintiff's mental impairments cause "mild difficulties" and "some adverse impact on the quality of her personal life" (Tr. 369), they did not preclude her from performing basic work activities.[8]  This conclusion is supported by substantial evidence.

As noted above, an impairment is not severe if it does not significantly limit an individual's ability to perform basic work activities.  20 C.F.R. § 416.921(a).  Basic work activities include understanding, carrying out, and remembering simple instructions; use of judgment; dealing with changes inherent in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  20 C.F.R. § 416.921(b).  Plaintiff's medical records indicate she is capable of performing these tasks.

As discussed in the ALJ's decision, both Dr. Hartman and Dr. Cavanaugh found Plaintiff capable of understanding and following simple instructions, and making appropriate decisions.  (Tr. 199, 738.)  Both found her attention, concentration, and memory skills only mildly impaired, and noted that her thought processes were otherwise coherent and goal directed.  (Tr. 199, 737.)  Dr. Cavanaugh opined that Plaintiff could relate to and interact appropriately with others (Tr. 738); Dr. Drucker concurred, noting Plaintiff had only mild difficulties in maintaining social functioning.  (Tr. 790.)

These findings are consistent with the records of Plaintiff's treating physicians, Drs. Greenwald and Arancibia.  As noted by the ALJ, Plaintiff did not have any concentration deficits at her March 2003 intake evaluation or at her May 2003 psychiatric assessment.  (Tr. 184, 194.)  Although Drs. Greenwald and Arancibia reported in September 2004 that anxiety and depression

---

[8]  Significantly, the ALJ accounted for these "mild difficulties" in defining Plaintiff's RFC, limiting her to "simple, repetitive tasks."  (Finding 5, Tr. 359.)

11

seemed to interfere, Plaintiff's memory and concentration were nevertheless "organically intact." (Tr. 305.)  Similarly, the neurologist who examined Plaintiff on October 25, 2005 found good cognition and comprehension, good memory, and satisfactory attention span.  (Tr. 448-49.)

Plaintiff argues that the ALJ did not accord proper weight to Dr. Greenwald's 2006 opinion that Plaintiff had a fair to poor ability to perform certain work-related mental activities. (Pl. Br. 21.)  But, while the Social Security regulations tend to give greater weight to the opinions of treating physicians like Dr. Greenwald, they are not dispositive. 20 C.F.R. § 416.927(d)(2). The determination of an individual's functional capacity is explicitly reserved to the Commissioner, not the treating professional.  See 20 C.F.R. § 416.927(e)(1)-(2).

Here, Dr. Greenwald's 2006 assessment, completed at the request of Plaintiff's counsel, related to Plaintiff's capacity to function in a work environment.  Accordingly, the ALJ was not required to give his assessment any special significance.  20 C.F.R. §§ 416.927(e)(3).  Moreover, the ALJ considered Dr. Greenwald's opinion and adequately explained why he accorded it little weight: he noted that Dr. Greenwald did not provide a supporting rationale for his assessment, and explained that it was inconsistent with the findings of Dr. Hartman and Dr. Cavanaugh, and with Dr. Greenwald's own previous reports of Plaintiff's symptoms.  (Finding 5, Tr. 367.)  In short, the ALJ was reasonable in his consideration of Dr. Greenwald's opinion.[9]  See Fargnoli, 247 F.3d at 43 (treating physician's opinion not controlling if contradicted by other record

---

[9] The ALJ also adequately weighed the opinions of Dr. Rahman, the state agency consultant who rated Plaintiff's functional limitations.  The ALJ did not credit Dr. Rahman's opinions of "moderate" difficulties in certain functional areas, and properly explained why he found them excessive: he pointed to the contradictory findings of Plaintiff's treating physicians and examining mental health consultants, as well as Plaintiff's own statements of her ability to perform daily living activities.  (See Finding 5, Tr. 368-69.)

evidence).

Finally, Plaintiff argues that the ALJ erred by ignoring testimony from the vocational expert concerning the impact of Plaintiff's mental condition on her ability to perform work. This testimony was elicited through hypothetical questions posed by Plaintiff's attorney at the hearing. (Pl. Br. 14-18.) These hypothetical questions were based on the mental functional capacity assessments of Dr. Rahman (Tr. 476-77), and Dr. Greenwald (Tr. 478-79.) As noted above, the ALJ gave little weight to these opinions, adequately explained why, and properly found that Plaintiff did not suffer from mental limitations of the severity described by these physicians. (Tr. 367-69.) Thus, the ALJ was entitled to give the vocational expert's responses on these issues less consideration. See Plummer, 181 F.3d at 431 (noting that a hypothetical question must reflect impairments supported by the record).

The ALJ appropriately gave greater weight to the vocational expert's opinion that a hypothetical individual of Plaintiff's age, education, work experience, and RFC would be able to perform the jobs of document preparer, coil inspector, and sorter. (Finding 11, Tr. 376; Tr. 474-75.) The ALJ relied on this opinion at Step 5 to demonstrate that there were jobs that Plaintiff could have performed despite her impairments. (Finding 11, Tr. 375.) Plaintiff argues that this reliance was improper because the hypothetical questions on which the expert's opinion was based did not account for Plaintiff's mental limitations. (Pl. Br. 31.) However, the ALJ reasonably accounted for Plaintiff's mental condition in defining her RFC as limited to "simple, repetitive tasks." As discussed above, this determination is supported by substantial medical evidence; accordingly, the ALJ's reliance on the vocational expert's testimony was proper. See Plummer, 181 F.3d at 431.

13

### III.  CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff was not disabled prior to December 19, 2005 is based on substantial evidence.  Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff Social Security benefits.

Therefore, **IT IS** on this 27th day of February, 2009, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

                                                            /s/ **Faith S. Hochberg**
                                                            Hon. Faith S. Hochberg, U.S.D.J.